[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
The plaintiff has brought suit against these two individual defendants as a result of his purchase of a used car, allegedly from the defendant Hickey, acting by and through his employee, Mazziotti. It subsequently developed that the vehicle had been stolen and the plaintiff incurred the loss of the purchase price and the cost of improvements he made prior to its return to the rightful owner.
The events giving rise to this dispute originate on or about April 9, 1993 when the plaintiff claims he saw a van on the premises of "Hickey's Quality Used Cars," and spoke to James Hickey about purchasing it. He was referred to Mr. Mazziotti, employed as a salesman by Hickey. (Hickey testified that he actually operated this business as a corporation and the corporation employed Mazziotti.) CT Page 5877
The plaintiff gave Mazziotti a $100 check made out to Mazziotti. He returned a few days later, paid the balance of $3300, and obtained a receipt from Mazziotti. Though not pleaded by either defendant, the defense at trial was that this vehicle was not a Hickey used car but was owned by a third party. Mazziotti was doing that third party a favor by selling the vehicle for him.
Neither defendant pleaded this defense, nor was the third party joined in the action by the plaintiff or either defendant. The plaintiff has not alleged fraud or a CUTPA violation, but in an allegation sounding in negligence claims:
 "9. The defendant's [sic] knew, or should have known, in the exercise of reasonable care and caution, that this was a stolen vehicle and that they did not have proper legal title to the same."
 DISCUSSION
There are relatively few disagreements as to the facts in this case, but those few are significant. The plaintiff claims he saw this van on the Hickey used car lot and that is what prompted him to see Mr. Hickey in his office, whereupon Hickey referred him to his salesman, Mr. Mazziotti.
Mr. Hickey denies ever speaking to the plaintiff until after he came to the lot to pick up the vehicle. He also claims the vehicle was only on his lot on the day the plaintiff came to pick it up. He also stated the vehicle was at a nearby gas station and not on his lot. This raises the interesting question of why, if the vehicle was not on the Hickey lot, the plaintiff came to the lot to inquire about purchasing it.
This is not a situation where a car dealer sold a car from its stock which turns out to have been stolen. Rather, the issue is whether by their actions, these defendants combined to lead this plaintiff to believe he was buying a car from the Hickey lot and in reliance thereon he was damaged. In effect, was he sold a stolen car by virtue of the actions and representations of these defendants.
The presence of the vehicle on the Hickey lot is apparently what led the plaintiff to make an inquiry. When that inquiry CT Page 5878 resulted in a referral by Hickey to "See Ron," the presumption was that the vehicle was a Hickey used car. The subsequent acts of Mazziotti in negotiating a price (originally the price was quoted as $3700 or $3800), accepting a deposit, making out an invoice showing the full price, and delivering the vehicle on the Hickey lot, all confirmed the transaction as an ordinary used car sale — by Hickey.
In view of these actions of Mazziotti, he certainly owed a duty to the plaintiff to sell him a vehicle that the seller actually owned. His undertaking to "do a favor" of this type entails risks and responsibilities. He assumed them in the process.
The liability of Mr. Hickey is less obvious, but the court concludes that he too must be held liable for his actions and inactions.
First of all, the court accepts the plaintiff's version of the events — that he went to speak to Mr. Hickey about the vehicle on Hickey's lot. Mr. Hickey saw fit to refer him to his salesman and made no statement to the effect that the vehicle was not a Hickey used car but Ron was doing a favor for the owner. In the course of the ensuing events, the plaintiff was given a business card for "Hickey's Quality Used Cars" with "Dean Mazziotti — Sales" imprinted thereon. Hickey concedes that the vehicle was delivered to the plaintiff from his lot and he claims this was the only time he spoke to the plaintiff. He apparently uttered no disclaimer then either, and left the plaintiff to assume he'd just received a car sold by Hickey.
By permitting his premises to be so utilized and holding out both himself and his salesman as dealing with this plaintiff in the capacities the plaintiff observed them and upon which he relied to assume he was dealing with a reliable car dealer and his salesman, the defendant Hickey is also liable to the plaintiff for the losses he incurred.
The defendant Hickey was sued in his individual capacity "dba Hickey's Quality Used Cars." He interposed no defense that this car lot was operated by a corporation. At trial, he testified that the business was that of "Hickey's Automotive Corporation." However, no supporting evidence of the present status and function of such a corporation was presented. Given the questionable behavior of this defendant in this transaction and CT Page 5879 questions raised by his testimony, the court is not prepared to find a corporate existence without corroboration.
Further, even if there were an existing corporate entity, the nature of the actions and inaction discussed above are tortious in nature and could well be found the function of an individual acting as such and not in furtherance of a corporate objective. This is particularly likely here where the subject of the sale was not corporate property for corporate profit, but an effort on behalf of a third party. In fact, the conduct of this sale for a third party on the licensed premises is in all likelihood a statutory violation if not a criminal act.
CONCLUSION
It is the judgment of the court that the plaintiff recover of the defendants the sum of $3400, the cost of the vehicle, plus $1000 for the modification costs he expended, and interest on the amount of this judgment ($4400) from October 29, 1993 to the date hereof in the amount of $1555.73.
The plaintiff is entitled to his taxable costs.
Anthony V. DeMayo Judge Trial Referee